Filed 3/23/26  In re M.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.M., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E086209 |
| Plaintiff and Respondent, | (Super.Ct.No. J300791) |
| v. | OPINION |
| M.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara B. Hutson, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant M.M. (father) challenges the juvenile court's ruling, made at his six-month review hearing, that plaintiff and respondent San Bernardino County Children and Family Services (department) provided reasonable services. We reject the argument and affirm.[1]

## I. BACKGROUND

Father's three children are A.S. (born 2012), J.M. (born 2015), and M.M. (born 2018). The children's four siblings are part of the dependency case, as are the seven children's mother, but only father is a party to this appeal. Some of the children, as well as both parents, are deaf.

The children were referred to the department after one went to school with choke marks on their neck and other bruises. That child said they got into an altercation with mother's boyfriend, who slapped them, threw them to the ground, choked them, and kicked them several times. Mother witnessed the incident but did not intervene, telling the child the incident was their fault. One of the other siblings said mother's boyfriend has also hit two of the other children and that the physical abuse has been occurring for three years.

In April 2024, the department filed section 300 petitions alleging as to father that his children were at substantial risk of serious physical harm from his willful or negligent failure to supervise or protect the children from a custodian's conduct. (See § 300, subd.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

(b).) The department's jurisdiction and disposition report noted that father was aware of multiple instances of his children getting hit by mother's boyfriend but refused to intervene.

In July 2024, the trial court declared the children dependents of the court and ordered reunification services for father.

Also in July 2024, the children again were referred after five of the children alleged sexual abuse by mother's boyfriend. Two of father's children were examined for sexual abuse, the second such examination taking place in December 2024. After the children denied any such abuse and the examinations came back normal, the referral was closed as unfounded.

Father was referred to individual therapy and parenting education classes. He completed individual therapy in August 2024 and parenting education classes in November 2024. In a January 2025 report, the department said the agency providing father's individual therapy and parenting education classes had not provided progress reports or certificates of completion even though the department had requested them. Those items were provided, however, as part of a March 2025 report.

In late January 2025, despite having already completed individual therapy and parenting education classes, father was referred for additional individual therapy and for family therapy. The record does not clearly disclose what caused the second referral. Father asserts in briefing that the additional referrals were made due to the sexual abuse allegations. The transcript from the six-month review hearing suggests that the therapist

3

for the initial sessions did not believe more sessions were necessary and that the social worker disagreed. Father completed his initial round of individual therapy just two weeks after the combined jurisdiction and disposition hearing. He began the additional individual therapy sessions soon after the referral was made and said at the six-month hearing that he had only a few sessions remaining.

Attempts to begin family therapy appear so far to have been unsuccessful. A February session did not take place because the American Sign Language interpreter stated she never received the online meeting information. A March session could not be held because the interpreter was busy assisting other people. A later March session did not occur because father could not attend. An April session did not happen because the children's caregiver forgot to have the children log on to participate in the remote session.

At the six-month review hearing in April 2025, father requested additional transportation assistance for his in-person visits with his children. He noted that the distance between his home and where the visits were taking place required a two-and-a-half-hour drive and that he had limited income. He also asked the court to find that reasonable services were not provided to him. The juvenile court disagreed, finding that reasonable services had been provided and ordering that reunification services continue.

## II. DISCUSSION

"At the six-month review hearing, '[i]f the child is not returned to their parent or legal guardian, the court shall determine by clear and convincing evidence whether

4

reasonable services that were designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent or legal guardian . . . .' [Citation.] 'When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence.' [Citation.] 'In general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof.' [Citation.] 'The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case.'" (*In re A.O.* (2025) 111 Cal.App.5th 1048, 1061-1062.) "'In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.'" (*Id.* at p. 1063.)

Substantial evidence supports the juvenile court's finding, based on clear and convincing evidence, that father was provided with reasonable services. Father was referred to, and completed, his initial individual therapy sessions weeks after the dispositional hearing. The record does not establish why father was referred for additional therapy. However, father says in briefing the second referral was due to the

5

children's allegations of sexual abuse by mother's boyfriend, accusations that were later deemed unfounded. The examinations relating to those accusations were not completed until December 2024, and the second referral was made in January 2025. Father began additional individual therapy sessions soon after the second referral was made, and as of the six-month hearing, he had only a few sessions remaining. We find nothing unreasonable about either the initial therapy sessions or the referral for additional therapy.

Father focuses on the delay in initiating family therapy sessions. Even though the referral for family therapy was made in January 2025, it does not appear that family therapy sessions have taken place. The delay, however, was not the result of any single incident or cause. Two sessions did not take place because the interpreter either never received the online meeting information or needed to assist other people. One session failed because the children's caregiver forgot to have the children log on. And one session never occurred because *father* could not attend. Although "[s]ome effort must be made to overcome obstacles to the provision of reunification services" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 973), father has not identified what the department should have done differently, given that the delay is the result of the collective failure of several people, father included. And in any event, contrary to what father contends, this case is not similar to *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, disapproved on other grounds in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, footnote 8, where the court found insufficient evidence of a reasonable services finding based on a much

longer delay in initiating therapy. (See *id.* at p. 1244 ["from September 2016 until July 2017, Mother was provided with no individual therapy"].)

Father contends that the services he was provided were not reasonable because they failed to properly account for his hearing disability. (See *In re J.P.* (2017) 14 Cal.App.5th 616, 625 ["The reunification plan must be appropriate for each individual family and based on the unique facts relating to that family"].) Generally, father had the assistance of an interpreter during the reunification period, whether because the record directly states as such or because the record shows a social worker was able to document interactions with father. Any failures are either uncorroborated by the record or minimal. Father refers to his counsel's statement, made at a January 2025 hearing, that he was "not receiving communication from the social worker." This statement does not identify any specific incident (or incidents), and father does not point us to any place in the record that would corroborate this claim. Father also notes that an interpreter was once 30 minutes late to a video visit with the children and did not appear at an April 2025 individual therapy session. Overall, however, there is substantial evidence that his case plan accounted for his hearing disability.

Father also contends that reasonable services were not provided because he received insufficient transportation assistance from the department. There is no indication in the record, however, that father raised this issue with the department before the six-month review hearing when the reasonable services finding was made. Because there is no reason to believe that the department was aware of father's transportation

7

concerns before the six-month review hearing, father may not rely on it in arguing that the services provided were unreasonable. (See *In re Christina L.* (1992) 3 Cal.App.4th 404, 416 ["If Mother felt during the reunification period that the services offered her were inadequate, she had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan: '"The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal."'"].)

In sum, although "the services provided were imperfect" (*In re A.O.*, *supra*, 111 Cal.App.5th at p. 1063), they were reasonable under the circumstances, and sufficient evidence supports the juvenile court's finding in that regard.

### III. DISPOSITION

The April 15, 2025, orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.

8